UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                        :

JOHN DOE,                               :

                  Plaintiff,      :

                -v-              :         23 Civ. 6325 (JPC)

                               :

JENNIFER LYNN GROSS, *a.k.a.*    :    OPINION AND ORDER
JENNIFER STENGAARD GROSS,    :

                               :

                  Defendant.    :

                               :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiff, proceeding as "John Doe" in this action, alleges that Defendant Jennifer Gross raped and sexually assaulted him before, during, and after their brief marriage from approximately June 2011 to May 2012. He asserts causes of action for sexual abuse under Section 213-c of the New York Civil Practice Law and Rules ("NYCPLR"), assault and battery under New York common law, assault and battery under California common law, and violations of the Victims of Gender-Motivated Violence Protection Law (the "VGMVPL") under the New York City Administrative Code, N.Y.C. Admin Code, §§ 10-1101 *et seq.* Defendant moves to dismiss the operative complaint in its entirety. For the reasons provided below, the Court grants in part and denies in part Defendant's motion. The Court further grants Plaintiff leave to amend to the extent he can cure the deficiencies identified herein.

## I.  Background

A.    Facts[1]

When Plaintiff met Defendant in 2011, Am. Compl. ¶ 15, he was an "up-and[-]coming television actor and successful luxury model," *id.* ¶ 16, who was facing financial struggles at the "lowest point in his professional career," *id.* ¶ 19.   In Defendant's initial conversations with Plaintiff, Defendant falsely represented that she was a "very successful multi-billionaire" with credits as a movie and music producer, leading Plaintiff to believe that she was interested in furthering his career.  *Id.* ¶ 17.   As alleged, this misrepresentation was part of a "method" Defendant was "us[ing] . . . on Plaintiff" to "seduce him with guarantees to fully finance his television and film projects."  *Id.* ¶ 21.

Around May 2011, Defendant insisted that Plaintiff join her for work trips and further threatened that if Plaintiff did not accompany her on an upcoming June 2011 trip to Cabo San Lucas, Mexico, she would not finance his projects or work with him going forward. *Id.* ¶ 25.  And when Plaintiff, hoping to "avoid traveling with Defendant," advised that he could not afford such a trip, Defendant insisted that she would pay for Plaintiff's travel and demanded his company.  *Id.* ¶ 26.  Defendant booked only one room with a shared bed.  *Id.* ¶ 29.

In Mexico, while the two were swimming, Defendant allegedly grabbed Plaintiff's penis and tried to kiss him.  *Id.* ¶ 30.  Shortly thereafter, in an effort to prevent any misunderstandings,

---

[1]  The following facts, which are assumed true solely for purposes of this Opinion and Order, are taken from the Amended Complaint, Dkt. 20 ("Am. Compl.").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").  For the avoidance of doubt, the Court emphasizes that its recitation here of Plaintiff's relevant allegations does not reflect any factual findings made by the Court.  These allegations are merely assumed true for purposes of resolving Defendant's motion to dismiss.

Plaintiff shared that he was a "closeted, homosexual male." *Id.* ¶ 31. Defendant agreed to continue their friendship and business relationship. *Id.* Yet, throughout the trip, Defendant, purportedly to intimidate Plaintiff, began to mention that her "billionaire father" was "dangerous and violent to enemies of hers and of the family, destroying their careers and even lives," even claiming that her father was now tracking and monitoring Plaintiff at all hours. *Id.* ¶ 32. Defendant then informed Plaintiff that he would need to keep traveling with her for the sake of continuing their work together and promised to cover Plaintiff's travels and rent to assuage Plaintiff's financial concerns. *Id.* ¶ 33. Throughout the course of their relationship, Defendant, aware that Plaintiff was brought up in a religious household, routinely threatened to "out" Plaintiff and thereby "put[] his relationships with his family and faith directly at risk." *Id.* ¶ 35.

At some point thereafter, the two traveled to Paris, France, once again sharing a bed at Defendant's insistence. *Id.* ¶ 36. During this trip, Defendant told Plaintiff that her religious father would not accept her having a business partner who was homosexual. *Id.* ¶ 37. Plaintiff alleges that Defendant then suggested that the two marry in California without a prenuptial agreement so that they could be "officially 50/50 equal partners in any and all personal finances and business matters" and so "Plaintiff could stay in the closet being gay" and "Defendant [] could protect [Plaintiff's] career." *Id.* ¶ 38. Plaintiff was "keenly aware that similar relationship[s] existed all throughout Hollywood between 'trusted' friends[] and believed [Defendant] was a trusted ally." *Id.*

It is unclear whether Plaintiff was, as a result, open to Defendant's proposal. But on Plaintiff's telling, Defendant forced Plaintiff to marry her immediately upon their return from Paris in a "haphazard and rushed secret wedding ceremony" on or around June 8, 2011. *Id.* ¶¶ 39, 41. As further alleged, on the eve of their wedding, while the pair were in California, Defendant

drugged and raped Plaintiff.  *Id.* ¶ 42.  Shortly thereafter, Plaintiff demanded an annulment.  *Id.*
¶ 43.  Defendant refused and instead promised that the two would remain platonic business
partners and that she would "fully fund Plaintiff's career projects on the sole condition that he
remain silent."  *Id.* ¶ 44.  Defendant threatened that she would "ruin" Plaintiff if he left her.  *Id.*
She also told Plaintiff that she had "wanted [to have his] child from the moment they met."
*Id.* ¶ 45.

According to Plaintiff, at some unspecified point in the marriage, Defendant—to further
her goal of "secur[ing] a child from Plaintiff"—began requiring Plaintiff to masturbate daily so
that Defendant could collect Plaintiff's semen and manually inseminate herself with a turkey
baster.  *Id.* ¶¶ 49-50.  Moreover, she purportedly forced him to do so under her supervision.  *Id.*
¶ 49.  Plaintiff alleges that whenever Plaintiff opted to masturbate privately in a bathroom,
Defendant would force the door open and, on some occasions, Defendant would even begin
"assist[ing Plaintiff] against his will."  *Id.*  He further alleges that while the two were in bed,
Defendant would frequently grab Plaintiff's penis "and masturbate [him] against his will."  *Id.*
¶ 57.  And on other occasions, Plaintiff purportedly would wake to Defendant performing oral sex
on him, with such instances occurring both in New York City, New York, and in Los Angeles,
California.  *Id.* ¶ 58.  In addition, Plaintiff alleges that "around June of 2011," while the two were
in New York City, Plaintiff awoke to Defendant raping him.  *Id.* ¶ 55.

As alleged, the pair divorced in or around May 2012,[2] and Defendant cast out Plaintiff from
the home and cancelled his credit cards and bank accounts.  *Id.* ¶ 68.  Plaintiff was thereafter
homeless but stayed in Los Angeles for work.  *Id.* ¶¶ 68-69.  Although unclear how long after the

---

[2] According to Defendant, "public records show that [Defendant] filed for a dissolution of
marriage on August 18, 2011, only a few months after the parties met."  Docket 25 ("Motion") at
3.

divorce, upon discovering that Plaintiff was still residing in Los Angeles, Defendant demanded that Plaintiff meet her at her home; Plaintiff agreed to do so.  *Id.* ¶ 69.  Plaintiff alleges that when, upon his arrival, he reluctantly agreed to hug Defendant, Defendant grabbed Plaintiff's penis and forced her tongue into his mouth.  *Id.* ¶ 70.  Plaintiff pushed Defendant away and left.  *Id.*

Plaintiff asserts that, as a result of Defendant's abuse, he has suffered "future pecuniary and reputational losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses."  *Id.* ¶ 78.

**B.    Procedural History**

On July 21, 2023, Plaintiff filed a six-count complaint, Dkt. 1 ("Complaint"), bringing claims for (1) sexual abuse under Section 213-c of the NYCPLR, *id.* ¶¶ 80-86; (2) assault and battery under New York common law, *id.* ¶¶ 87-98; (3) intentional infliction of emotional distress under New York common law, *id.* ¶¶ 99-105; (4) violations of the VGMVPL, *id.* ¶¶ 106-114; (5) violations of New York's Adult Survivors Act ("ASA"), N.Y. C.P.L.R. § 214-j, Complaint ¶¶ 115-119; and (6) violations of California's Sexual Abuse and Cover Up Accountability Act ("SACUAA"), Cal. Civ. Proc. Code § 340.16, Complaint ¶¶ 120-124.  On August 2, 2023, Plaintiff sought leave from this Court to proceed anonymously, justifying his request under the ten factors identified by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*, 573 F.3d 18, 189-90 (2d Cir. 2009).  Dkt. 5.  The Court granted the request provisionally and without prejudice to a future motion to unseal Plaintiff's identity by Defendant, once served with the Complaint.  Dkt. 6.

On December 6, 2023, Defendant moved to dismiss the Complaint, arguing that the Complaint broadly failed to meet basic notice pleading standards, Dkt. 18 at 3-5, that Plaintiff's common law claims were time-barred and further that Plaintiff had failed to state a claim for intentional infliction of emotional distress, *id.* at 5-8, that Plaintiff's VGMVPL claim was

insufficiently pleaded because Plaintiff had failed to allege facts suggesting that Defendant harbored animus against Plaintiff's gender, *id.* at 10-11, and finally that neither the ASA nor the SACUAA created an independent cause of action, *id.* at 8-10.

In response, on December 27, 2023, Plaintiff filed the operative four-count Amended Complaint, which alleges claims for (1) sexual abuse under NYCPLR Section 213-c, Am. Compl. ¶¶ 80-94; (2) assault and battery under New York common law, *id.* ¶¶ 95-108; (3) assault and battery under California common law, *id.* ¶¶ 109-119; and (4) violations of the VGMVPL, *id.* ¶¶ 120-131.  On January 31, 2024, Defendant moved to dismiss the Amended Complaint.  Dkt. 25.  Plaintiff opposed the motion on February 21, 2024, Dkt. 26 ("Opposition"), and Defendant replied two weeks thereafter, Dkt. 27 ("Reply").

## II.  Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Indeed, the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it "need not consider conclusory allegations or legal conclusions couched as factual allegations," *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).

### III.  Discussion

Initially, Defendant contends broadly that the Amended Complaint is too conclusory and vague to support any of Plaintiff's claims in that "[e]ach claim merely recites the elements required to establish the claim, without any stated nexus to [Defendant's] alleged conduct."  Motion at 5. To the extent Defendant asks this Court to dismiss the entire Amended Complaint solely because Plaintiff has failed to specify under each cause of action the specific factual allegations upon which he relies for the claim, the Court declines.

Under the pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under this standard, "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006).  To be sure, Plaintiff's rote incorporation of preceding paragraphs and formulaic recitation of the elements of his asserted claims leaves to Defendant (and to the Court) the task of combing through the Amended Complaint and inferring what conduct Plaintiff attempts to assert under each claim.  But in this case, that task is not unduly onerous.  Nor, as discussed below, is the Amended Complaint so undecipherable as to fail to provide Defendant fair notice of the nature of each claim.  *See Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, No. 06 Civ. 8195 (DLC), 2009 WL 2695090, at *3 (S.D.N.Y. July 8, 2008) ("Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is 'not meant to impose a great

burden upon a plaintiff.'" (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005))). Finding no basis to dismiss the entire Amended Complaint based on its organizational structure alone, the Court proceeds to consider Defendant's specific challenges to each claim.[3]

## A.    Count One: Sexual Abuse Under NYCPLR Section 213-c

In Count One, Plaintiff proceeds under Section 213-c of the NYCPLR, which permits civil claims against a person who could be charged with criminal liability for certain enumerated sexual offenses, N.Y. C.P.L.R. § 213-c, and he specifically asserts violations of Sections 130.35 and 130.70 of the New York Penal Code, which respectively proscribe rape in the first degree and aggravated sexual abuse in the first degree, *see* N.Y. Penal Law §§ 130.35, 130.70.  *See* Am. Compl. ¶¶ 81-83.  Defendant's argument for dismissal of this Count falls under her broader argument that the Amended Complaint fails as a whole to adequately provide notice of the claim being brought against her.  Motion at 5.  As such, Defendant criticizes the Amended Complaint for including under this cause of action only a verbatim recitation of certain sections of the New York Penal Law and conclusory allegations that Defendant is liable and that Plaintiff suffered damages, all while failing to provide any explanation of "what alleged conduct relates to this cause of action." *Id.*  The Court disagrees that Plaintiff's pleading is so deficient as to warrant complete dismissal of this claim.

First, the Amended Complaint provides sufficient notice of the alleged conduct comprising Plaintiff's civil claim for rape in the first degree.  Under New York Penal Law Section 130.35, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless[.]"  N.Y.

---

[3] As discussed *infra* at III.E, Defendant also contends that Plaintiff's causes of action are duplicative and urges broad dismissal on those grounds.  The Court addresses those arguments together after assessing each count individually.

Penal Law § 130.35. As defined in New York Penal Law Section 130.00, the term "sexual intercourse" bears "its ordinary meaning and occurs upon any penetration." *Id.* § 130.00(1). Moreover, the term "'[p]hysically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." *Id.* § 130.00(7). "Further, New York courts have reaffirmed that 'the definition of physically helpless is broad enough to cover a sleeping victim.'" *Dunham v. Travis*, 313 F.3d 724, 731 (2d Cir. 2002) (quoting *People v. Sensourichanh*, 737 N.Y.S.2d 670, 671 (3d Dep't 2002)).

Here, Plaintiff alleges that he "woke up . . . to Defendant [] raping" him sometime in June 2011 "at the W Hotel Union Square in New York City." Am. Compl. ¶ 55. While Plaintiff does not restate this allegation under "Count One" in the Amended Complaint, it is not so difficult to infer that Plaintiff's claim for civil liability for rape is connected to Plaintiff's allegation of rape. The Court thus denies Defendant's motion to dismiss Count One as it pertains to civil liability for rape.

On the other hand, the Amended Complaint is bereft of any factual allegations to give rise to civil liability for aggravated sexual abuse in the first degree. Under New York Penal Law Section 130.70, "[a] person is guilty of aggravated sexual abuse in the first degree when he or she inserts a foreign object in the vagina, urethra, penis, rectum or anus of another person causing physical injury to such person . . . [b]y forcible compulsion . . . [or w]hen the other person is incapable of consent by reason of being physically helpless[.]" N.Y. Penal Law § 130.70. Plaintiff does not allege in his Amended Complaint that Defendant at any time inserted a foreign object into his "urethra, penis, rectum or anus."

Accordingly, the Court grants Defendant's motion to dismiss Count One to the extent Plaintiff relies on a theory of aggravated sexual abuse in the first degree. The Court denies

Defendant's motion to dismiss Count One insofar as the claim is predicated on alleged rape in the first degree, and addresses Defendant's argument that the claim must be dismissed as duplicative *infra* at III.E.

**B.     Count Two: Assault and Battery Under New York Common Law**

In Count Two, Plaintiff brings a claim for assault and battery under New York common law.  Defendant once again contends as a preliminary matter that she cannot discern what conduct Plaintiff means to tie to this claim.  Motion at 8 ("[T]he basis for Plaintiff's assault and battery claims are unclear to [Defendant].").  Defendant further implies that—for the purpose of assessing the timeliness of this action and whether the civil claim is revived under New York's ASA—she cannot determine in the first instance whether this claim is based on the sex offenses defined in Article 130 of the New York Penal Law.  *Id.* ("To the extent that Plaintiff is alleging general assault and battery claims, not based on sexual offenses defined in Article 130 of the New York Penal Law, the ASA does not apply to them, and they are time-barred.").  The Court is again unpersuaded that it is so difficult to bridge the pertinent factual allegations with this cause of action.

Initially, Plaintiff's assault and battery claims plainly are predicated on allegations that Defendant committed various sexual offenses defined in Article 130 of the New York Penal Law: in Count Two, Plaintiff expressly alleges that Defendant's "actions amount to violations under [New York] Penal Law §§ 130.52, 130.55, and 130.65," respectively describing forcible touching, sexual abuse in the third degree, and sexual abuse in the first degree.  Am. Compl. ¶ 103; *see also id.* ¶ 99 (also under Count Two, alleging that "Defendant [] *sexually* assaulted and battered Plaintiff" (emphasis added)).  Under the New York Penal Law, "[a] person is guilty of forcible touching when such person intentionally, and for no legitimate purpose . . . forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such

person, or for the purpose of gratifying the actor's sexual desire." N.Y. Penal Law § 130.52. "A person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's consent . . . ." *Id.* § 130.55. And "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is incapable of consent by reason of being physically helpless[.]" *Id.* § 130.65. As Plaintiff has alleged that Defendant frequently grabbed his penis and masturbated him against his will, Am. Compl. ¶ 57, and that he awoke to Defendant performing oral sex on him while the two were in New York, *id.* ¶ 58, the Court declines to dismiss this Count based on Defendant's insistence that she cannot possibly make sense of the cause of action as pleaded.

Moreover, as Plaintiff's assault and battery claims are based on alleged conduct comprising sexual offenses defined in Article 130 of the New York Penal Law, this cause of action is timely. In New York, assault and battery claims have a one-year statute of limitations. N.Y. C.P.L.R. § 215. Given that Plaintiff commenced this action in July 2023 and principally alleges conduct that occurred in 2011 and 2012, the statute of limitations set forth in Section 215 has clearly expired. "But the ASA provides for a one-year 'look back' window for adult survivors of sexual assault whose claims otherwise fall outside of the statute of limitations. Beginning on November 24, 2022, six months after the ASA's enactment, and continuing until November 24, 2023, anyone who was sexually assaulted as an adult in New York State and whose civil claim was previously outside the statute of limitations would have one year to file a civil lawsuit." *Heath v. Galloway*, No. 23 Civ. 10886 (LTS), 2024 WL 2978475, at *3 (S.D.N.Y. June 10, 2024) (citing N.Y. C.P.L.R. § 214-j). Indeed, pursuant to the ASA,

> every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against

such person who was eighteen years of age or older . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.

N.Y. C.P.L.R. § 214-j (effective May 24, 2022).  As this action was initiated on July 21, 2023 (before November 24, 2023), this claim has been timely brought.[4]

## C.      Count Three: Assault and Battery Under California Law

In Count Three, Plaintiff brings a claim for assault and battery under California law.  As with Count Two, Defendant insists that she cannot discern whether Plaintiff is bringing a general assault and battery claim or such a claim predicated on sexual offenses.  Motion at 9.  If the former, Defendant contends that the claim is plainly time-barred (because, according to Defendant, the California SACUAA does not apply to generalized assault and battery claims), and if the latter, Defendant contends that the claim must be dismissed as duplicative of other claims in the Amended Complaint.  *Id.* at 9-10.

Initially, the Court finds that Plaintiff clearly intends for this claim to fall under those revived by the California SACUAA.  Plaintiff states as much in the Amended Complaint.  *See* Am. Compl. ¶ 119 ("This action is timely because it falls within Cal. Civil Code 340.16 and is brought during the three-year time period set forth in that section.").  Plaintiff further lists three specific sex offenses under the California Penal Code for which Plaintiff seeks to hold Defendant civilly

---

[4] In assessing timeliness, the Court uses the date the original complaint was filed, given that Plaintiff's battery and assault claims plainly "ar[i]se out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and the Amended Complaint thus "relates back to the date of the original pleading."  Fed. R. Civ. P. 15(c).  Defendant raises no argument to the contrary.

liable: sexual battery, rape, and forcible sexual penetration, *id.* ¶ 114, proscribed respectively under California Penal Code Sections 243.4, 261, and 289.[5]

> Section 340.16 of the California Civil Code provides:
>
> (a) In any civil action for recovery of damages suffered as a result of sexual assault, where the assault occurred on or after the plaintiff's 18th birthday, the time for commencement of the action shall be the later of the following:
>
> (1) Within 10 years from the date of the last act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff.
>
> (2) Within three years from the date the plaintiff discovers or reasonably should have discovered that an injury or illness resulted from an act, attempted act, or assault with the intent to commit an act, of sexual assault against the plaintiff.

Cal. Civ. Proc. Code § 340.16(a). "Sexual assault" is in turn defined with reference to certain enumerated crimes described in the California Penal Code, including in Sections 243.4, 261, and 289. *Id.* § 340.16(b)(1). As amended in 2022 by the SACUAA, Section 340.16 further provides that, with exceptions not relevant here, for "any action described in subdivision (a) that is based upon conduct that occurred on or after January 1, 2009, and is commenced on or after January 1, 2019, that would have been barred solely because the applicable statute of limitations has or had expired[,] . . . [s]uch claims . . . may be commenced until December 31, 2026." *Id.* § 340.16(b)(3). As Plaintiff alleges conduct that occurred in 2011 and 2012 and commenced this action on July 21, 2023, the claim is timely under this provision.[6]

Next, the Court finds that the Amended Complaint's factual allegations largely provide sufficient notice of the nature of this claim. In California, "[a]ny person who touches an intimate

---

[5] The Amended Complaint lists Section "234.4" of the California Penal Code, a section number that does not exist. Plaintiff presumably meant Section 243.4, which is captioned "Sexual battery; punishment."

[6] The Court notes that no argument has been raised as to whether the timeliness of any claim asserted in the Amended Complaint is assessed under New York law or California law.

part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery." Cal. Penal Code § 243.4(a). Rape is defined as "an act of sexual intercourse accomplished" where, as seemingly most relevant here, "a person is at the time unconscious of the nature of the act, and this is known to the accused." *Id.* § 261. Here, Plaintiff alleges that "on the eve of the wedding night" in Los Angeles, California, "Defendant [] drugged and raped Plaintiff." Am. Compl. ¶ 42. He also alleges that he "would wake up to Defendant" performing oral sex on him against his will and that this "happened [] in Los Angeles." *Id.* ¶ 58. These allegations are sufficient to put Defendant on notice of the conduct alleged in connection with this claim, insofar as sexual battery and rape are concerned.

The Amended Complaint, however, is wholly devoid of factual content plausibly alleging Defendant's liability under Section 289 of the California Penal Code, which proscribes sexual penetration against the victim's will. Sexual penetration is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." Cal. Penal Code § 289(k)(1). The Court is unable to identify any allegations in the Amended Complaint describing such conduct.

The Court therefore grants Defendant's motion to dismiss Count Three to the extent Plaintiff's claim is based on a theory that Defendant's conduct renders her civilly liable for forcible sexual penetration as described in Section 289. The Court otherwise denies Defendant's motion to dismiss Count Three, and further addresses Defendant's argument that the claim must be dismissed as duplicative *infra* at III.E.

14

**D.      Count Four: Violations of the Victims of Gender-Motivated Violence Protection Law**

In Count Four, Plaintiff alleges violations of New York's VGMVPL.  Defendant contends that Plaintiff has failed to allege any conduct occurring in New York that states a claim under the VGMVPL and suggests that Plaintiff has failed to plead the requisite animus.  Motion at 10-11.  The Court disagrees.

The VGMVPL confers a private right of action for "injur[y] by a party who commit[ted] . . . a crime of violence motivated by gender."  N.Y.C. Admin. Code § 10-1104.  A "[c]rime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law . . . if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction."  *Id.* § 10-1103.  And a "[c]rime of violence motivated by gender" is defined as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."  *Id.*  "Generally, the animus element requires the plaintiff to present 'extrinsic evidence of the defendant's expressed hatred toward [the victim's gender] as a group' or allege specific 'actions and statements by the perpetrator during the commission of the alleged crime of violence.'"  *Rossbach v. Montefiore Med. Ctr.*, No. 19 Civ. 5758 (DLC), 2021 WL 930710, at *10 (S.D.N.Y. Mar. 11, 2021) (quoting *Breest v. Haggis*, 115 N.Y.S.3d 322, 329 (1st Dep't 2019)); *cf. Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 WL 222186, at *3 (S.D.N.Y. Feb. 25, 2000) (discussing in the context of the Violence Against Women Act that courts consider the "perpetrator's language, severity of the attack, lack of provocation, previous history of similar incidents, absence of other apparent motive, and common sense" (internal quotation marks omitted)).  The New York Supreme Court's Appellate Division, First Department, recently has clarified, however, that where rape and sexual

assault are alleged, "[m]alice or ill will based on gender is apparent from the alleged commission of the act itself.  Animus inheres where consent is absent."  *Breest*, 115 N.Y.S.3d at 330.

Plaintiff alleges that Defendant raped him while at a hotel in Manhattan, and also that he woke to her performing oral sex on him while they were in New York.  Am. Compl. ¶¶ 55, 58.  In addition, Plaintiff alleges that Defendant raped and drugged him on another occasion in California, performed oral sex on him while sleeping in California, instructed him to masturbate under her supervision, regularly grabbed his penis, and masturbated him—all against his will.  *Id.* ¶¶ 30, 42, 56 57, 58, 70.  At this early stage in the litigation, these allegations suffice to state a VGMVPL claim.

**E.    Duplicative Claims**

Lastly, the Court considers Defendant's arguments that Plaintiff's claims are duplicative of each other.  Defendant argues broadly that "[b]ecause the Amended Complaint does not differentiate what allegations are intended to support each of the four claims, it can only be presumed that Plaintiff is relying on precisely the same set of allegations for each cause of action."  Motion at 10.  Defendant thus urges that "Plaintiff must make clear the basis of the four claims he has alleged, and any duplicative claims must be dismissed."  *Id.*  In her lead brief, Defendant appears to urge dismissal of Count Three as duplicative, *see id.* at 10, but in her reply, Defendant appears to urge dismissal specifically of Counts One and Four on this ground, *see* Reply at 5 ("[A]t the very least the two sexual abuse claims should be dismissed.").

In any case, the Court finds that dismissal of any claim as duplicative is unwarranted at this stage.  Indeed, having parsed the Amended Complaint, the Court is satisfied that the allegation of rape that occurred in New York forms the basis of Count One, that the other allegations of sexual assault occurring in New York form the basis of Count Two, and that the allegations of both rape

and other sexual assault that occurred in California form the basis of Count Three. While Count Four, Plaintiff's claim under New York's VGMVPL, does indeed appear to arise from the same conduct arising under other claims, the Court declines to dismiss the claim at this juncture, discerning "no basis to force [P]laintiff to elect one theory of recovery over the other at this time." *U.S. Network Servs., Inc. v. Frontier Comm'ns of the W., Inc.*, 115 F. Supp. 2d 353, 358 (W.D.N.Y. 2000) (declining to dismiss the plaintiff's breach of warranty claim as duplicative of the breach of contract claim even though the plaintiff "clearly cannot obtain duplicative damage awards"); *see also Roelcke v. Zip Aviation, LCC*, No. 15 Civ. 6284 (DAB), 2018 WL 1792374, at *9, 13-14 (S.D.N.Y. Mar. 26, 2018) (allowing a claim under VGMVPL and a claim under Section 213-c of the NYCPLR for rape and sexual abuse against the same defendant to proceed at the motion-to-dismiss stage).

## F.    Leave to Amend

Lastly, the Court grants Plaintiff leave to file a second amended complaint. *See* Opposition at 17 n.3 (requesting leave to amend "[i]n the event the Court finds that dismissal is warranted"); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While he has already amended his complaint once, Plaintiff could presumably plead facts that cure the Amended Complaint's defects as to aspects of Counts One and Three. Moreover, as this case—with discovery having not commenced—"is still in its infancy, there would be minimal prejudice to Defendant" in granting leave to amend. *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *10 (S.D.N.Y. May 27, 2020). Plaintiff should amend only if he is able to rectify the pleading deficiencies outlined in the Opinion and Order. Plaintiff is cautioned that, absent good cause shown, further leave to amend will not be granted.

### IV.  Conclusion

For the foregoing reasons, Defendant's motion is granted in part and denied in part.  Count One, to the extent it relies on a theory of aggravated sexual abuse in the first degree, and Count Three, to the extent it relies on a theory of forcible sexual penetration, are dismissed without prejudice and with leave to amend.  Counts One through Four otherwise survive.

Should Plaintiff decide to file a second amended complaint, he must do so within thirty days of this Opinion and Order.  If Plaintiff fails to file a second amended complaint within thirty days or obtain an extension of time to do so by that date, the Court will dismiss with prejudice Count One insofar as it is premised on aggravated sexual abuse in the first degree and Count Three insofar as it is premised on forcible sexual penetration.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 24.

SO ORDERED.

Dated: August 7, 2024
     New York, New York

                                          JOHN P. CRONAN
                           United States District Judge